UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TOMMIE E. EVANS,

   Plaintiff,

 v.              Case No. 17-C-1436

SCOTT ROSS and
JANE DOE,

   Defendants.

---

### DECISION AND ORDER GRANTING DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Tommie E. Evans, who is currently serving a state prison sentence at the Wisconsin Secure Program Facility and representing himself, filed this action pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated. In particular, Evans asserts Defendants Correctional Officer Scott Ross and Nurse Jane Doe were deliberately indifferent to his medical needs when they ignored his sling and front cuff restrictions ordered by the Health Services Unit (HSU). Presently before the court is Defendants' motion for summary judgment. For the following reasons, the motion will be granted and the case will be dismissed.

## BACKGROUND

At all times relevant, Evans was incarcerated at Waupun Correctional Institution (WCI), and Ross was a correctional officer at WCI. On December 3, 2016, Nurse York entered a restriction into the Wisconsin Integrated Corrections System (WICS) for Evans to have a "Brace/Immobilizer/Sling/Splint" for his shoulder. Defs.' Proposed Findings of Fact (DPFOF) ¶ 5, Dkt. No. 54. Under the special instructions column, Nurse York added "Sheet folded and used as

[right] arm sling as needed." *Id.* at ¶ 6. Nurse York fashioned a sheet-sling for Evans because he was in the Restrictive Housing Unit (RHU) and was not allowed to possess objects containing metal. On December 4, 2016, Nurse Kaycum saw Evans and noted in his medical records that a cuff-in-front restriction was issued. *Id.* at ¶ 8. This restriction was not added to WICS until December 20, 2016, however.

On December 7, 2016, Ross appeared at Evans' cell door in RHU and advised him that he needed to be transported to Dane County for a court appearance. Evans appeared at the door with a sheet wrapped around his arm as a sling. When Evans informed Ross of his front-cuff and sling restrictions, Ross left Evans' cell to contact HSU and verify those restrictions. At WCI, correctional officers are not permitted to order or override medical restrictions or treatment decisions. If an inmate informs an officer that he has a medical restriction to be handcuffed in the front, the officer contacts the HSU to verify the restriction. Officers must verify restrictions with HSU even if an inmate produces documentation noting the restriction because officers do not have access to medical records and do not know whether the purported documentation is valid.[1]

Ross later returned to Evans' cell door and stated that HSU advised that Evans did not have a sling restriction and that Ross could cuff him from behind. Ross then directed Evans to place his hands behind his back. Evans complied, and Ross placed him in handcuffs and escorted Evans to the sally port, where Dane County law enforcement waited to take Evans into their custody for transport. Although Evans concedes that Ross told him that he called HSU, Evans disputes that

---

[1] Evans attempts to dispute Ross' assertion that WCI's policy requires that officers verify inmate restrictions, but this fact is supported by evidence in the record, including declarations of Ross and other individuals employed at WCI. In addition, this assertion is not refuted by any evidence offered by Evans. Evans must do more than raise mere "metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citation omitted).

2

Ross actually called HSU because Evans only saw Ross speak with another officer on the unit and did not personally see him call HSU. Evans nevertheless admits that he did not watch Ross the entire time Ross was away from his cell.

At the sally port, Evans again mentioned his restrictions and informed Ross that he was in pain. Ross contacted HSU again to determine whether Evans could take his sling with him. Upon Ross' return, he informed Evans that HSU indicated that Evans does not need a sling or other restrictions. The Dane County sheriff then took custody of Evans, cuffed him in front, and transported him to court.

## LEGAL STANDARD

Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel*, 612 F.3d at 937 (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Evans asserts that Correctional Officer Ross and Nurse Jane Doe were deliberately indifferent to his medical needs when they failed to acknowledge his medical restriction requiring the use of a sling and front handcuffs. As an initial matter, on September 18, 2018, the court ordered Evans to identify the Jane Doe defendant in this case by December 1, 2018, or she would be dismissed from this case. Dkt. No. 36 at 2. To date, Evans never properly identified Nurse Jane Doe. In light of the fact that Evans has not identified Jane Doe in a timely manner, his claims against her will be dismissed. The court will now address Evans' claim against Ross.

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). An inmate's claim for deliberate indifference must establish "(1) an objectively serous medical condition; and (2) an official's deliberate indifference to that claim." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). In this case, Ross does not dispute that Evans had an objectively serious medical condition. As a result, the court will address whether Ross was deliberately indifferent.

Deliberate indifference requires more than negligence or even gross negligence; it requires that Ross knew of, yet disregarded, an excessive risk to Evans' health or safety. *Farmer*, 511 U.S. at 835, 837; *see also Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) ("A state officer is deliberately indifferent if he does nothing . . . or when he takes action that is so ineffectual under

4

the circumstances that deliberate indifference can be inferred."). It is not enough to show that the defendant merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). The plaintiff must demonstrate that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of harm exists" and that the defendant actually drew that inference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

In this case, Evans has failed to present sufficient evidence that Ross' conduct exhibited a "total unconcern" for his welfare and safety. *See Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) (noting that deliberate indifference standard imposes "a high hurdle on plaintiffs because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks'" (citation omitted)). Though Evans advised Ross that he had a sling and front cuff restriction, WCI policy required that Ross verify these restrictions with HSU to ensure that they were accurate and had not expired. After Ross contacted HSU, he told Evans that HSU advised that Evans did not have a sling restriction and that Ross could cuff him in the back. While Evans disputes that Ross contacted HSU before his transport to the sally port, he concedes that Ross did call HSU once they arrived at the sally port and that HSU advised that Evans did not have a sling or other restrictions. It was not improper for Ross to act on the information he had received from HSU, even if that information was inaccurate. *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (noting "the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care"). Evans asserts that Ross had access to his medical information and restrictions through the computer and should have verified the restrictions on his own. But even if Ross had consulted Evans' information on WICS himself, he would not have seen the restrictions because they were not documented in the

5

program until thirteen days after the incident. In short, Evans has not shown that Ross acted with a total unconcern for his welfare and therefore has not established that Ross was deliberately indifferent. Accordingly, Ross' motion for summary judgment will be granted.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 52) is **GRANTED** and Defendants' motion to stay (Dkt. No. 59) is **DENIED as moot**. The case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this __24th__ day of June, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
